## John Winslow Jones *vs.* New England and Nova Scotia Steamship Company.

### Cumberland.    Opinion February 16, 1880.

#### *Exceptions.    Common Carriers.*

Exceptions to an entire charge in general terms cannot be sustained, unless the whole is found incorrect, nor when such charge embraces in substance, part of the instructions requested by the excepting party.

The refusal to instruct the jury, "That the mere fact of delivery of the goods to the defendant corporation for transportation, raised a presumption that such delivery was made and the goods received for immediate transportation," &c., is justified, when it cannot be gathered from the case that there was any such "mere fact of delivery of the goods" in evidence, unaccompanied by proof of verbal communication between the agents of the parties, and of the contract they entered into, the true character and terms of which were really the subjects of the controversy between the parties.

ON `EXCEPTIONS.

This was an action of the case to recover damage for loss of goods, which plaintiff alleges in his writ was caused by the defendant's negligence as a common carrier.

At the trial the plaintiff requested the following instructions :

"1st. That the mere fact of delivery of the goods to defendant corporation for transportation, raised a presumption that such delivery was made and goods received for immediate transportation, and the liability of common carrier attached, unless modified by special agreement."

"2d. That the bill of lading offered in this case is not sufficient to exempt defendant corporation from its common law liability as a common carrier, because it (the bill of lading) assumes to exempt from liability from loss by fire, whether resulting from accident or the negligence of defendant corporation."

"3d. That the non delivery of the salmon is *prima facie* evidence of negligence upon the part of defendant corporation."

"4th. That the burden is upon defendant corporation to show that the loss of goods occurred by some cause other than its own negligence."

"5th. That the loss of the goods is *prima facie* evidence of negligence."

"6th. That if the flour was delivered for transportation upon the next steamer which was to sail from defendant's wharf, such delivery was a delivery for *immediate* transportation, and the defendant would be liable as a common carrier."

"7th. The burden to show that the loss did not occur by defendant's negligence is on defendant."

"8th. That defendant is not excused from liability for loss of the salmon, unless the jury shall find that the plaintiff, at the time of the delivery in Halifax, accepted the bill of lading offered in evidence, without objection."

"9th. That in the absence of any agreement in writing, signed by the consignee, limiting the liability of a common carrier, or evidence of the acceptance of a bill of lading so limiting the liability, without objection, a common carrier is liable for loss of goods delivered and received for carriage."

"10th. That the bill of lading offered in this case, and the evidence offered relative thereto, and relative to the delivery and acceptance of the salmon by defendant in Halifax, does not exempt defendant for loss of the salmon."

The exceptions, after reciting the requested instructions and the entire charge of the judge, adds, "to all which rulings and instructions, and refusals to instruct, the said plaintiff excepts, and prays that his exceptions may be allowed."

*C. P. Mattocks*, for the plaintiff, claimed, that where a steamboat company has one steamer making weekly trips, and merchandise is left at the steamer's wharf, after the steamer has sailed, to be transported on the next trip, and the merchandise is received for this purpose and not for storage merely, the liability is that of common carrier, and the company would be liable to make good damage to such merchandise by fire after the return of the steamer, but before it was put on board.

The refusal of the presiding judge to give the first requested instruction, left the burden upon the plaintiff to show a special contract that the goods were delivered to, and received by the defendant corporation as a common carrier, instead of compelling

a common carrier to prove that goods received by him, in the ordinary course of business, were not received by him as a common carrier.

It is only when goods are subject to further orders of the shipper, that the limited liability of warehouseman attaches. *Barron et al.* v. *Eldredge et als.* 100 Mass. 458; *O'Neil* v. *N. Y. Cen. R. R. Co.* 60 N. Y. 138.

Generally the liability as common carrier attaches the moment the carrier receives the goods into his warehouse, or upon his dock or wharf. *Clarke* v. *Needles,* 25 Pa. St. 338; *Ladue* v. *Griffith,* 25 N. Y. 364; Story on Bailments, § 532; *Moses* v. *B. &. M. R. R. Co.* 4 Foster, 71; *Blossom* v. *Griffin,* 3 Kernan, 569; Story on Bailments, § 536; *Fitchburg & W. R. R. Co.* v. *Hanna et al.* 6 Gray, 541; *Merriam* v. *H. &. N. H. R. R. Co.* 20 Conn. 354; *Wilson* v. *G. T. Ry.* 57 Maine, 138.

*Strout & Holmes,* for the defendant.

BARROWS, J.   The exceptions set out the entire charge of the presiding judge as taken by the stenographer, and thereupon say, "to all which rulings and instructions . . . the said plaintiff excepts," &c.   So far as any of the instructions given are concerned, the wholesale character of the exception would be of itself a sufficient reason for overruling it, if any of the instructions are found correct; *MacIntosh* v. *Bartlett,* 67 Maine, 130; *Harriman* v. *Sanger, Id.* 442; *Crosby* v. *Maine Central R. R. Co.* 69 Maine, 418.   A large part of the charge is as favorable to the plaintiff as the rules of law will permit.   The instructions thus excepted to in gross, include in substance at least, four of the ten instructions requested by the plaintiff, — the third, fourth, fifth and seventh.   Plaintiff's counsel very properly concedes that it must be regarded as established by the verdict under the instructions given, that the loss of the salmon did not result from the negligence of the defendants, and hence under the bill of lading, presented by the plaintiff, defendants are not liable for it; and this disposes of four out of the six remaining requests, viz: the second, eighth, ninth and tenth.

The sixth request was that the jury should be instructed that "if the flour was delivered for transportation upon the next

steamer, which was to sail from defendant's wharf, such delivery was a delivery for immediate transportation, and the defendant would be liable as a common carrier." It is apparent that this calls for an authoritative decision as upon a question of law, of what seems to have been the principally controverted vital question of fact in the case. Plaintiff's counsel does not insist upon his exception to the refusal to give it.

He bases his claim to a new trial upon the refusal to give the instruction stated in his first request, and to instructions which he construes as laying it down as a rule of law, that if defendant's steamer made but one trip a week, and the plaintiff, knowing this fact, should leave goods at defendant's wharf at any time before the steamer had returned to this port and had discharged her inbrought cargo, and before she was in a condition to receive any articles of the outgoing cargo, such delivery of goods would be a delivery for storage, and not for immediate transportation; and defendant corporation would be liable as warehousemen only, that is in case of negligence, and not as an insurer as a common carrier.

But if any question upon the instructions except that already alluded to, were open to the plaintiff upon his general exceptions to the charge, it would only be necessary to remark, that, in order to reach this construction, the plaintiff's counsel omits and ignores an essential element in the instruction as actually given, to the effect that this result would follow, if "it was then left with the understanding that it remained there on storage until the vessel was in condition to receive another cargo." The presiding judge repeatedly called the attention of the jury to the inquiry: What was the agreement or understanding of the parties upon which the flour was left? and he concludes thus: "In other words, I mean to have you understand that the agreement of the parties, their understanding of the purpose for which the flour was left, is to govern."

There is no report of the evidence upon which these instructions were based, but the case indicates that there was conflicting evidence on the questions of delivery and acceptance of the goods, and the terms of such acceptance, and that the character and purpose of such acceptance (if there was one), were

carefully left by the presiding judge to be determined by the jury from the evidence.  This condition of things seems to make the first requested instruction (as to the effect of the mere fact of delivery of the goods to defendant corporation for transportation, in raising a presumption that such delivery and reception were for the purpose of immediate transportation), needless and immaterial, as there is nothing tending to show that there was any such "mere fact of delivery" in evidence, unaccompanied by testimony as to the terms and conditions upon which it was made and accepted.  It does not appear that there was any written contract between these parties, touching the purpose or terms upon which the flour was received by the defendant corporation, and it was for the jury to determine what understanding was reached by the respective agents of the parties in the course of their verbal communications.

The case does not appear to have been one of mere tacit delivery and reception, which would make the plaintiff's requested instruction appropriate.  We see no reason to doubt that the jury passed upon the case with a full understanding that they must determine, from the evidence, whether the agreement between the parties, acting by their respective agents, was that the flour was received by the defendants as common carriers for transportation, or as warehousemen for storage until the time when their steamer should be in readiness to receive it on board; nor that they failed to understand from the charge, that the defendants would be liable as common carriers for the flour, received by them, to be transported over their route for hire, although not placed on board, unless,—to use the language of the judge in the charge,—"it was then left with the understanding that it remained there on storage until the vessel was in condition to receive another cargo."

This is entirely consistent with the doctrine of *Fitchburg & Worcester R. R. Co.* v. *Hanna et al.* 6 Gray, 539, cited by plaintiff's counsel, where MERRICK, J., correctly remarks (p. 542) : "When goods are brought ·and delivered to a party for transportation, he can determine for himself in what relation he will receive them.  If he is a common carrier, he is certainly required by law, to take and transport goods, tendered to him

for that purpose. But he is to have a reasonable opportunity to make the necessary preliminary preparations for that service; and he can therefore, if he choose so to protect himself, whenever it is necessary and proper that he should have some intermediate time for preparation before proceeding on the voyage or journey, receive the goods and keep them during such intervening period as a warehouseman, and not as a common carrier." It cannot be doubted that it was competent for the defendants to contract to receive this flour, delivered the day after their boat had left and six days before it would again leave on its regular trip, — not as common carriers for immediate transportation, — but as warehousemen, until the boat should be in condition to receive cargo; and the jury seem to have found that such was the contract and understanding of the parties.

*Exceptions overruled.*

APPLETON, C. J., WALTON, PETERS, LIBBEY and SYMONDS, JJ., concurred.